UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| RONNY MCDANIEL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>NCB MANAGEMENT SERVICES, INC.,<br><br>Defendant. | Case No.: 18-cv-250<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and Wisconsin Consumer Act, Ch. 421-427, Wis. Stats. ("WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Ronny McDaniel is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family or household purposes, namely a personal credit card account.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt Defendants sought to collect from Plaintiff was incurred as a result of a consumer transaction.

6. Defendant NCB Management Services, Inc. ("NCB") is a foreign business corporation with its principal place of business located at One Allied Drive, Trevose, Pennsylvania 19053.

7. NCB does substantial business in Wisconsin and maintains a registered agent for service of process in Wisconsin at C T Corporation System 301 S. Bedford St. Suite 1, Madison, Wisconsin 53703.

8. NCB is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9. NCB is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

10. NCB is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat § 427.103(3).

## FACTS

11. On or about April 19, 2017, "World's Foremost Bank" ("WFB") mailed an account statement to Plaintiff regarding an alleged debt, allegedly owed to WFB and associated with Plaintiff's "Cabela's Club" credit card account with an account number ending in 9463. A copy of this account statement is attached to this complaint as Exhibit A.

12. The alleged debt referenced in Exhibit A is an alleged Cabela's-branded credit card, issued by WFB and used only for personal, family or household purposes, including but not limited to purchases of household goods at Cabela's stores. http://www.cabelas.com/category/CLUB-Visa-Program/153277380.uts.

2

13. WFB is, or was, a bank created by sporting goods retailer Cabela's to issue and service Cabela's credit card accounts. Upon information and belief, Cabela's sold WFB's credit card assets and liabilities to Synovus Bank in 2017, in advance of Cabela's merger with Bass Pro Shops. *See* http://www.macon.com/news/business/article145252349.html.

14. Upon information and belief, Exhibit A is a form account statement, generated by computer, and with the information specific to Plaintiff inserted by computer.

15. Exhibit A states:

| Account Ending In 9463 | | | Cabela's CLUB Points | | |
|---|---|---|---|---|---|
| Previous Balance | = | $7,380.52 | (Points shown in dollars) | | |
| Payments/Credits | − | $0.00 | Previous Points Balance | = | $0.00 |
| Purchases/Cash Advances | + | $0.00 | Points Earned at Cabela's | + | $0.00 |
| Interest Charges/Fees | + | $146.43 | Points Earned at Cenex | + | $0.00 |
| **New Balance** | | **$7,526.95** | Points Earned Elsewhere | + | $0.00 |
| | | | Other Points Added | + | $0.00 |
| | | | Points Redeemed | − | $0.00 |
| **Purchases This Year:** | | $1,484.06 | **CLUB Points Available** | | **$0.00** |
| Revolving Credit Limit: | | $7,000.00 | | | |
| Available Credit: | | $0 | | | |
| Days in Billing Cycle: | | 30 | **Payment Information** | | |
| Statement Date: | | 04/19/2017 | New Balance | | $7,526.95 |
| | | | Amount Over Credit Limit | | $526.95 |
| | | | Amount Past Due | | $618.00 |
| | | | **Minimum Payment Due*** | | **$789.00** |
| | | | **Payment Due Date** | | **05/14/2017** |
| | | | *Minimum Payment Due does not include any promotional balance or amount in dispute. | | |

Exhibit A.

16. Exhibit A states that, as of April 19, 2017, Plaintiff's account ending in 9463 had a "New Balance" of $7,526.95, with a "Payment Due Date" of May 14, 2017, and a "Minimum Payment Due" of $789.00.

17. On or about May 4, 2017, NCB mailed Plaintiff a debt collection letter regarding the same alleged debt, allegedly owed to WFB. A copy of this account statement is attached to this complaint as Exhibit B.

3

18. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

19. Upon information and belief, Exhibit B is a form debt collection letter, generated by computer, and used by NCB to attempt to collect alleged debts.

20. Exhibit B contains the following:

```
Creditor: World's Foremost Bank, NA
Acct# : XXXXXXXXXXX9463
File# :        2849
Balance : $7,526.95
```

Exhibit B.

21. Exhibit B also contains the following:

> This communication is from a debt collector. The purpose of this letter is to collect a debt. Any information obtained will be used for that purpose. As of the date of this letter, you owe $7,526.95. Because of interest, late charges, and other charges assessed by your creditor that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you.

Exhibit B.

22. The bottom portion of Exhibit B is a payment remittance slip, which contains the following:

```
Ronny M McDaniel
File# :        2849 - NCB Management Services, Inc.
Client: World's Foremost Bank, NA
Acct# : XXXXXXXXXXX9463
Balance : $7,526.95
```

Exhibit B.

23. Exhibit B, mailed on May 4, 2017, about two weeks after WFB mailed Exhibit A to Plaintiff, states the account's "Balance" but does not state the amount that NCB is actually collecting – the amount that is "due" (including "past due") is the "minimum payment" amount that would return the account to a current status. *See Machnik v. RSI Enters.*, 2017 U.S. Dist.

LEXIS 160772, at *6 (E.D. Wis. Sept. 29, 2017) ("In the context of a debt, 'owing' an amount is distinguishable from the amount 'due.'"); *see also Barnes v. Advanced Call Ctr. Techs., LLC*, 493 F.3d 838, 840 (7th Cir. 2007) ("Only the past due amount, the amount owed [to the debt collector], can be the 'amount of the debt' under § 809(a)(1).").

24. Exhibit B, thus, represents that the debt had been accelerated and the full balance was due when Exhibit B was mailed.

25. NCB's representation in Exhibit B that NCB was attempting to collect the "Balance" of $7,526.95 is false, deceptive, misleading, and unconscionable.

26. Upon information and belief, WFB had not accelerated the balance when Exhibit B was mailed to Plaintiff.

27. With certain exceptions not applicable here, the WCA requires the mailing of a "Notice of Right to Cure" prior to the acceleration of a defaulted loan. *See* Wis. Stat. §§ 425.104, 425.105.

28. Upon information and belief, WFB had not sent Plaintiff notice of his right to cure default at the time Exhibit B was mailed to Plaintiff. Thus, neither WFB nor NCB were permitted to accelerate the balance when Exhibit B was mailed to Plaintiff.

29. According to Exhibit A, as of May 4, 2017, when NCB mailed Exhibit B, Plaintiff's account ending in 9463 had a "Minimum Payment Due" of $768.00, and a "Payment Due Date" of May 14, 2017. Exhibit A.

30. Even assuming WFB had mailed Plaintiff a Notice of Right to Cure, the unsophisticated consumer would be unable to determine whether the debt had been accelerated or not, or how much debt is actually due as of the date of Exhibit B. Exhibit B states that the

5

"Balance" is $7,526.95 without stating an amount "due" while Exhibit A seeks only a minimum payment of $768.00.

31. NCB and WFB both represented the amount of the debt in a way that was confusing to the unsophisticated consumer and/or misrepresented the amount of the debt.

32. Upon information and belief, NCB and WFB work in a scripted process to collect WFB debts such as Plaintiff's.

33. Upon information and belief, NCB is fully aware of the contents and representations in Exhibit A,

34. Upon information and belief, NCB is fully aware that WFB sends Exhibit A to consumers only a few days before NCB mails a letter in the form of Exhibit B.

35. Upon information and belief, NCB is fully aware that its letter is sent during account billing cycles wherein WFB has sent a statement to consumers seeking a "minimum payment" and not representing that the entire balance is due.

36. Exhibit B also contains the following:

> This communication is from a debt collector. The purpose of this letter is to collect a debt. Any information obtained will be used for that purpose. As of the date of this letter, you owe $7,526.95. Because of interest, late charges, and other charges assessed by your creditor that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you.
>
> Please see reverse side for important information.

Exhibit B.

37. Exhibit B states that "because of interest, late charges, and other charges assessed by your creditor that may vary from day to day, the amount due on the day you pay may be greater."

38. The statement in Exhibit B that "because of interest, late charges, and other charges assessed by your creditor that may vary from day to day, the amount due on the day you

6

pay may be greater," is a material representation that the creditor, or the debt collector, may impose interest, late charges, and other charges under applicable law. *Boucher v. Fin. Sys. of Green Bay*, No. 17-2308, 2018 U.S. App. LEXIS 1094, *8-9 (7th Cir. Jan. 17, 2018).

39. Assuming the balance of Plaintiff's account was properly accelerated neither NCB, nor the creditor, could collect late fees on the account unless it was returned to a current status. *See, e.g., Rizzo v. Pierce & Assocs.*, 351 F.3d 791, 794 (7th Cir. 2003) ("If, for whatever reason, the Rizzos did not want to pay the late fees, they were free to pay the loan as accelerated. Such a payment would nullify any obligation to pay post-acceleration late fees.").

40. Moreover, upon information and belief, when NCB mailed Exhibit B to Plaintiff, Plaintiff's account with World's Foremost Bank had "charged off." *See* 12 C.F.R. 226.5(b)(2)(i).

41. Upon information and belief, World's Foremost Bank had no intention to collect post-charge-off interest on Plaintiff's account. *See, e.g., McDonald v. Asset Acceptance LLC*, 296 F.R.D. 513, 521 (E.D. Mich. Aug. 7, 2013), *vacated by McDonald v. Asset Acceptance LLC*, 2016 U.S. Dist. LEXIS 102182 (E.D. Mich. June 23, 2016) ("Asset produced credit card account purchase agreements with other creditors that do not charge post charge-off interest. These include . . . World's Foremost Bank of Nebraska.").

42. The representation that the amount due on the account "may be greater" because of post-charge off interest and fees when the creditor does not actually intend to collect additional interest or fees is a material false representation, even if the creditor is legally entitled to do so. *See, e.g., Ruge v. Delta Outsource Group, Inc.*, 2017 U.S. Dist. LEXIS 35047, at *6 n.4, *9 n.6 (N.D. Ill. Mar. 13, 2017).

43. Plaintiff was confused by Exhibits A and B.

7

44. The unsophisticated consumer would be confused by Exhibits A and B.

### *The FDCPA*

45. The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997); *Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th Cir. 1982); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

46. The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir. 1996); *Gammon v. GC Services, LP,* 27 F.3d 1254, 1257 (7th Cir. 1994). The standard is an objective one—whether the plaintiffs or any class members were misled is not an element of a cause of action. *Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir. 1997). "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections Inc.,* 754 F. Supp. 383, 392 (D. Del. 1991).

47. Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 *et seq.*, the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.,* 839 F. Supp. 941, 944 (D. Conn. 1993).

> The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is

8

remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

*N.C. Freed Co. v. Board of Governors,* 473 F.2d 1210, 1214 (2d Cir. 1973).

48. Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Baker,* 677 F.2d at 780-1; *Woolfolk v. Van Ru Credit Corp.,* 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); *Riveria v. MAB Collections, Inc.,* 682 F. Supp. 174, 177 (W.D.N.Y. 1988); *Kuhn v. Account Control Tech.*, 865 F. Supp. 1443, 1450 (D. Nev. 1994); *In re Scrimpsher*, 17 B.R. 999, 1016-7 (Bankr. N.D.N.Y. 1982); *In re Littles,* 90 B.R. 669, 680 (Bankr. E.D. Pa. 1988), *aff'd as modified sub nom*. *Crossley v. Lieberman,* 90 B.R. 682 (E.D. Pa. 1988), *aff'd*, 868 F.2d 566 (3d Cir. 1989).

49. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No.

9

16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

50. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

51. 15 U.S.C. § 1692e prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

52. 15 U.S.C. § 1692e(2)(A) specifically prohibits: "The false representation of — the character, amount, or legal status of any debt."

10

53. 15 U.S.C. § 1692e(5) specifically prohibits "the threat to take any action that cannot legally be taken or that is not intended to be taken."

54. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

55. 15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

56. 15 U.S.C. § 1692f(1) specifically prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

57. 15 U.S.C. § 1692g(a) states:

a) **Notice of debt; contents**

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

### The WCA

58. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

59. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

60. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

61. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

62. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

63. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

64. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

65. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15 (Wis. 2010). In *Brunton*, the Wisconsin Supreme Court

12

Case 2:18-cv-00250-DEJ     Filed 02/20/18     Page 12 of 18     Document 1

explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

66. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

67. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

68. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

69. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

70. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

71. Prior to sending Exhibit B, NCB was aware that WFB had sent Plaintiff an account statement stating Plaintiff's account had a "Minimum Payment Due" of $768.00, and a "Payment Due Date" of May 14, 2017.

72. NCB represented to Plaintiff that Plaintiff's WFB account had been accelerated by seeking to collect the entire balance and not just the amount actually due. NCB's letter only sought to collect the entire "balance," including over $6,700 that was not "due" under the terms of the credit agreement with WFB.

13

73. NCB misrepresented the amount, character, and legal status of the debt it was collecting.

74. NCB's attempts to collect the entire balance of class members' WFB accounts were false, misleading and confusing representations, and were also an unfair and unconscionable means of collecting a debt.

75. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692(f), 1692f(1), and 1692g(a)(1).

## COUNT II – FDCPA

76. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

77. Exhibit B makes a materially misleading representation that Plaintiff's account is subject to additional "interest, late fees, and other charges," when neither the debt collector, nor the creditor, could or does seek these charges in the ordinary course of business.

78. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(10), 1692(f), 1692f(1).

## COUNT III -- WCA

79. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

80. In Exhibit A, WFB represented to Plaintiff that the account had a "Minimum Payment Due" of $768.00, and a "Payment Due Date" of May 14, 2017.

81. Nonetheless, WFB contracted with NCB to send Exhibit B, which stated the whole of Plaintiff's account was past due on May 4, 2017 and attempted to collect the entire $7,526.95 "balance" as though it had been properly accelerated.

82. In fact, when NCB sent <u>Exhibit B</u>, NCB knew that WFB had just sent Plaintiff an account statement representing that the WFB debt had not been accelerated.

83. Moreover, WFB had not sent Plaintiff written notice of his right to cure default, which is a prerequisite to accelerating a consumer credit card debt. Wis. Stat. §§ 425.104, 425.105.

84. Defendants violated Wis. Stat. §§ 427.104(1)(h) and 427.104(1)(j).

## COUNT IV – WCA

85. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

86. <u>Exhibit B</u> makes a materially misleading representation that Plaintiff's account is subject to additional "interest, late fees, and other charges," when neither the debt collector, nor the creditor, could or does seek these charges in the ordinary course of business.

Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

87. Plaintiff brings this action on behalf of four Classes.

88. Class I ("Nationwide Amount of Debt Class") consists of (a) all natural persons in the United States of America (b) who were sent an account statement by WFB in the form of <u>Exhibit A</u> to the complaint in this action, (c) and subsequently were sent an initial collection letter by NCB in the form of <u>Exhibit B</u> to the complaint in this action, (d) for an alleged debt incurred for personal, family or household purposes, (e) where the letter in the form of <u>Exhibit B</u> was mailed between February 20, 2017 and February 20, 2018, inclusive, (f) and was not returned by the postal service.

15

89. Class II ("Wisconsin Amount of Debt Class") consists of (a) all natural persons in the State of Wisconsin (b) who were sent an account statement by WFB in the form of <u>Exhibit A</u> to the complaint in this action, (c) and subsequently were sent an initial collection letter by NCB in the form of <u>Exhibit B</u> to the complaint in this action, (d) for an alleged debt incurred for personal, family or household purposes, (e) where the letter in the form of <u>Exhibit B</u> was mailed between February 20, 2016 and February 20, 2018, inclusive, (f) and was not returned by the postal service.

90. Class III ("Nationwide False Threat Class") consists of (a) all natural persons in the United States of America (b) who were sent a collection letter by NCB stating that "because of interest, late charges, and other charges assessed by your creditor that may vary from day to day, the amount due on the day you pay may be later," (c) where the alleged debt incurred for personal, family, or household purposes, and (d) was charged off at the time NCB's letter was mailed, (e) and where NCB's letter was mailed between February 20, 2017 and February 20, 2018, inclusive, (f) and was not returned by the postal service.

91. Class IV ("Wisconsin False Threat Class") consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter by NCB stating that "because of interest, late charges, and other charges assessed by your creditor that may vary from day to day, the amount due on the day you pay may be later," (c) where the alleged debt incurred for personal, family, or household purposes, and (d) was charged off at the time NCB's letter was mailed, (e) and where NCB's letter was mailed between February 20, 2016 and February 20, 2018, inclusive, (f) and was not returned by the postal service.

92. Each Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each Class.

93. There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether <u>Exhibits A and B</u> violate the FDCPA and/or the WCA.

94. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

95. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

96. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## <u>JURY DEMAND</u>

97. Plaintiff hereby demands a trial by jury.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: February 20, 2018

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)

Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com